UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

_____

| | | |
|---|---|---|
| ANDREA PERSON, | ) | C/A No.: 4:15-cv-4606-RMG-TER |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **Report and Recommendation** |
| | ) | |
| | ) | |
| ANGELIA RAWSKI, WARDEN, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Petitioner, through counsel, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254[1] on November 13, 2015. (Doc. #1). Respondent filed a motion for summary judgment on March 2, 2016, along with a return and memorandum. (Docs. #10 and #11). After receiving an extension, Petitioner filed a response in opposition on April 21, 2016. (Doc. #16). Respondent filed a reply on May 2, 2016, and Petitioner filed a motion for a hearing on July 25, 2016.

## **PROCEDURAL HISTORY**

The procedural history as set forth by the Respondent has not been disputed by

_____

[1] This habeas corpus case was automatically referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02(B)(2)(c), DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the district judge.

the Petitioner in her response. Therefore, the undersigned will set out the undisputed procedural history, in part, as set forth by the Respondent.

Petitioner is currently incarcerated in the Leath Correctional Institution pursuant to orders of commitment from the Clerk of Court for Richland County. Petitioner was indicted during the May 2007 term of Richland County Grand jury for Homicide by Child Abuse stemming from the 1998 death of Zachary Ulengchong ("Victim" ). Victim was the first of three infants to die while at Petitioner's in-home day care during a nine year period. Petitioner was represented by Douglas S. Strickler ("Strickler"), Chief Public Defender for the Fifth Judicial Circuit, and Elizabeth Fielding Pringle ("Pringle"), Chief Public Defender of Richland County. Petitioner's jury trial was held on November 16, 2009, before the Honorable Alison R. Lee. Petitioner was found guilty as indicted, and Judge Lee sentenced Petitioner to confinement for a period of twenty-two years.

**Direct Appeal**

A timely Notice of Appeal was served on behalf of Petitioner, and an appeal was perfected.  On appeal, Petitioner was represented by LaNelle Cantey, Appellant Defender of the South Carolina Division of Appellate Defense, Commission on Indigent Defense. Petitioner raised the following arguments:

I.    Did the trial court err in denying appellant's motion for a directed verdict when the only evidence against appellant was her

statement to police which was not proven by evidence *aliunde* the confession?

II.    Did the trial court err in denying appellant's motion for a mistrial after Officer David Wilson testified that he did have other contact with appellant that day but not on this case which raised the specter of other charges related to the deaths of two other babies in her care?

(Final Brief of Appellant, App. 1203).

The Respondent, through Assistant Attorney General Mark R. Farthing, made a Final Brief of Respondent on April 11, 2011. (App.p. 1162-1199). The South Carolina Court of Appeals affirmed the Petitioner's conviction and sentence by unpublished opinion. State v. Person, 2012-UP-068 (S.C.Ct. App. filed February 8, 2012). The Remittiur was issued on March 5, 2012, by the Clerk of Court for the South Carolina Court of Appeals. (App. p. 1216).

**PCR**

Petitioner filed her application for post-conviction relief (PCR) on June 19, 2012. Petitioner, through counsel, filed an amended PCR application on September 25, 2013, raising the following grounds for relief:

1.    Ineffective Assistance of trial counsel at a critical stage of the case, the pre-trial Jackson v. Denno hearing, including the failure to properly prepare for the hearing, the failure to call witnesses or offer testimony at the hearing, the failure to effectively cross-examine the State's witnesses, the failure to make any sort of argument to the judge regrading the voluntariness of the statement, and the failure to advise Petitioner on the importance

3

and implication of the hearing or her right to testify at the hearing.

2.      Ineffective assistance of trial counsel for calling Dr. Kimberly
        Collins as an expert witness and/or for failing to properly prepare
        the witness.

(App. 1247).

An evidentiary hearing was held before the Honorable James R. Barber, III, on October 2, 2013, at the Richland County Courthouse.  (App. 1262). Petitioner was represented by counsels Alexis K. Lindsay, Esquire, and Thornwell F. Sowell, III, Esquire. Megan E. Harrigan and Walt Whitmire of the South Carolina Attorney General's Office represented the Respondent. During the hearing, Petitioner testified on her own behalf and presented testimony from Saul Kassin, Ph.D.; Marc Harari, Ph.D, and trial counsel Strickler. Respondent presented testimony from trial counsel Pringle. Judge Barber denied the PCR application and filed his order of dismissal on January 30, 2014. (App. 1586-1622).

## PCR APPEAL

Petitioner filed a Notice of Appeal on February 27, 2014. Petitioner, through current counsel, filed a petition for writ of certiorari on August 7, 2014, raising the following allegations:

1.      Did the circuit court err in holding that petitioner's
        trial counsel was not ineffective in failing to prepare
        for and present witnesses and arguments at the pre-
        trial Jackson v. Denno hearing?

4

> 2.    Did the circuit court err in holding that Petitioner's trial counsel was not ineffective in calling Kimberly Collins, M.D. as an expert witness?

(Petition for writ of certiorari, attachment #10-3). The State filed a Return on October 6, 2014. The Petitioner filed a reply on October 16, 2014. On April 23, 2015, the Supreme Court of South Carolina entered its order denying the application for post-conviction relief in its entirety. (Attachment #10-6). The remittitur was issued on May 12, 2015. (Attachment #10-7).

## HABEAS ALLEGATIONS

Through Counsel, Petitioner raised the following allegations in her petition, quoted verbatim:

GROUND ONE:    Petitioner's trial counsel was constitutionally ineffective in their lack of effort at the pre-trial Jackson v. Denno hearing.

Supporting facts:    The prosecution's only evidence against Petitioner was her statements to police. The Jackson v. Denno hearing was the one chance for the defense to have Petitioner's statements ruled inadmissible. However, trial counsel did not call any witnesses, made little attempt to cross-examine the prosecution's witnesses, and waived their right to make an argument. Trial counsel did not make any valid attempt to keep the statements out even though trial counsel admitted at the PCR hearing that the "confession" was

"everything."

GROUND TWO:   Trial counsel was constitutionally ineffective for hiring and calling a forensic pathologist at trial who agreed with the State's opinion.

Supporting Facts:   The prosecution's expert witnesses testified that the victim died of asphyxiation. Therefore, it was crucial that the defense's expert testify that the victim died of pneumonia, which was the original cause of death listed on the death certificate. Instead, the defense's expert, Dr. Kimberly Collins, testified that the cause of death could be pneumonia only if the Petitioner's statements to police were not considered. When she considered those statements, however, Dr. Collins actually agreed withe the prosecution's experts' conclusion that asphyxiation was the cause of death. Her testimony bolstered the prosecution's case, and trial counsel knew she would testify this way but chose to call her anyway.

(Petition) (errors in original).

## **STANDARD FOR SUMMARY JUDGMENT**

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972). The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that

6

the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim,  Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor can the court  assume the existence of a genuine issue of material fact where none exists.  If none can be shown, the motion should be granted.   Fed. R. Civ. P. 56(c).

The moving party bears the burden of showing that summary judgment is proper.  Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof.  Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986).  The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However,

the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment.  Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992).  The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits."  Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings.  See Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves).  Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with ... affidavits, if any." Id. at 322; see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## STANDARD OF REVIEW

In addition to the standard that the court must employ in considering motions for summary judgment, the court must also consider the petition under the requirements set forth in 28 U.S.C. § 2254. Under § 2254(d),

8

> An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court
> shall not be granted with respect to any claim that was
> adjudicated on the merits in the State court proceedings
> unless the adjudication of the claim-
> (1) resulted in a decision that was contrary to, or involved
> an unreasonable application of, clearly established Federal
> law, as determined by the Supreme Court of the United
> States; or
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the State court
> proceeding.

Thus, a writ may be granted if a state court "identifies the correct principle from [the

Supreme] Court's decisions but unreasonably applies that principle of law" to the facts

of the case. Humphries v. Ozmint, 397 F.3d 206, 216 (4th Cir. 2005) (citing Williams

v. Taylor, 529 U.S. 362, 413 (2000)). However, "an 'unreasonable application of

federal law is different from an incorrect application of federal law,' because an

incorrect application of federal law is not, in all instances, objectively unreasonable."

Id. "Thus, to grant [a] habeas petition, [the court] must conclude that the state court's

adjudication of his claims was not only incorrect, but that it was objectively

unreasonable." McHone v. Polk, 392 F.3d 691, 719 (4th Cir. 2004). Further, factual

findings "made by a State court shall be presumed to be correct," and a Petitioner has

"the burden of rebutting the presumption of correctness by clear and convincing

evidence." 28 U.S.C. § 2254(e)(1).

## **ANALYSIS**

9

In Grounds One and Two of the habeas petition, Petitioner raises claims of ineffective assistance of counsel. Therefore, the law with regard to ineffectiveness of counsel will be set forth and each issue subsequently addressed separately.

When presented with an application for habeas relief, the first inquiry by the court is to determine whether the claim raised in the petition was "adjudicated on the merits" by the state court. 28 U.S.C. §2254(d). If the claim was properly presented to the state court and the state court adjudicated it, the deferential standard of review set forth in §2254(d) applies and federal habeas corpus relief may not be granted unless the relevant state-court adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." Id. § 2254(d)(1),(2); see Williams v. Taylor, 529 U.S. at 398.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). In the case of Strickland, supra, the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A petitioner must first show that his/her counsel committed error. If an error can be shown, the court must

10

consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir. 1985) (quoting Strickland), reversed on other grounds, 476 U.S. 28 (1986). In meeting the second prong of the inquiry, a complaining defendant must show that he/she was prejudiced before being entitled to reversal. Strickland requires that:

> [T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Strickland, 466 U.S. at 694.

The court further held at page 695 that:

> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct . . . the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. (Emphasis added.)

Id.; Williams v. Taylor, 529 U.S. 362 (2000)(confirming the Strickland analysis).

11

## Ground One

In Ground One, Petitioner argues ineffective assistance of counsel in their lack of effort at the pre-trial <u>Jackson v. Denno</u> hearing. Specifically, Petitioner argues that the only evidence against her were the statements she made to the police, and the <u>Jackson v. Denno</u> hearing was the one chance for the defense to have her statements ruled inadmissible. Petitioner asserts that counsels were ineffective for failing to raise the other two infant deaths, subsequent interrogations, and the polygraph while outside of the jury's presence. Further, Petitioner argues ineffective assistance of counsel by failing to call witnesses such as Dr. Saul Kassin[2], Dr. Marc Harari[3], and Petitioner to show how she was vulnerable to police questioning resulting in a false confession. Thus, Petitioner argues trial counsel was ineffective for failing to call any witnesses, made little effort to cross-examine the prosecution's witnesses, and waived their right to make any argument in a valid attempt to keep the statements out.[4] This

---

[2] Dr. Saul Kassin was admitted as an expert in social psychology in the field of false confessions.

[3] Dr. Marc Harari was admitted as an expert at the PCR hearing in the general field of psychology.

[4] In the response to the motion for summary judgment, Petitioner asserts that she rests on the arguments presented in her petition as to the issue related to the <u>Jackson v. Denno</u> hearing. Petitioner submits there is "a factual issue as to whether it was unreasonable for the PCR court to conclude that doing nothing at the <u>Jackson v. Denno</u> hearing was a valid strategic decision when trial counsel testified at the PCR hearing that the 'confession was everything, it was the be all, end all, the everything.'" (Doc. #16, p. 2).

issue was raised in the amended application for PCR and denied. It was raised in the

petition for writ of certiorari and denied. Respondent contends that the PCR court's

findings concerning trial counsels' testimony is entitled to deference and there is

ample evidence in the record to support the findings. Therefore, Respondent argues

that Petitioner has not shown that the PCR court's decision rests on an improper

determination of the facts or that it represents an unreasonable application of federal

law.

The following is a summation of the testimony as found by the PCR court at the

evidentiary hearing, quoted verbatim, in part:

**Dr. Paul Kassin**

> Kassin testified that in the present case, if he was called during the
> Jackson v. Denno hearing, he would have been able to testify as to the
> risk factors of false confessions and how they related to Applicant's
> specific case. He acknowledged that he was able to inform the jury of
> these risk factors during his trial testimony, but testified that he was not
> able to discuss Applicant's polygraph test, the length of time that she
> was interviewed, or the significance of the two other deceased children
> while he was before the jury.  Additionally, he testified that he would
> have been able to testify regarding dispositional risk factors, such as
> Applicant's personality traits and how those would make her more or
> less likely to provide a false confession, though he readily admitted that
> he has never met Applicant and did not do a personality or any other
> assessment on her. However, he acknowledged that Applicant does not
> meet many of his risk factors, as she is a middle-aged, highly educated
> woman with a background in psychology, who has run her own business
> for several years, and has no history of mental illness. Kassin recognized
> that he would have needed an audio or video recording to best analyze
> Applicant's confession and would have been significantly hampered

13

since no recording was available for his review. Kassin testified that he would not have testified to an ultimate conclusion at the Jackson v. Denno hearing, but would have merely provided factors to make one more susceptible to false confession to the court to aid in its decision naming. He testified that he would have never opined that Applicant's confession was false and that this is something that needs to be determined by the trier of fact. . . .

(Tr. 1604-1605).

## Dr. Marc Harari

Harari testified that he was contacted by Applicant's counsel on September 23, 2013 and asked if he could perform expedited psychological testing in anticipation of Applicant's post conviction relief hearing the following week. He testified that he informed Applicant's counsel that he could do a psychological evaluation on interpersonal characteristics of Applicant. He testified that Applicant's counsel provided him with his only collateral information, including: that Applicant was diabetic, that three children had died in Applicant's care in situations that Applicant's counsel characterized as "classic SIDS and overheating," that Applicant was put through what Applicant's counsel described as a "lengthy interrogation" including a polygraph test, that Applicant was seeking to overturn her convictions on claims that she was coerced by law enforcement to make a false confession and that her trial counsel was ineffective for not having this testimony excluded from trial, and that Applicant had retained a false confession expert to testify at her post-conviction relief hearing and needed an expert to testify as to her susceptibility to coercion. He testified that he and Applicant's counsel "brainstormed" how to measure the likelihood of one being susceptible to coercion, as he has no background in the field. He testified that he and Applicant's counsel determined the Minnesota Multiphasic Personality Inventory - Two - Restructured form (MMPI-2-RF), the Paulhus Deception Survey (PDS), and the Personality Assessment Inventory (PAI) would be "good indicators" as to one's susceptibility to coercion. He testified that his hypothesis was that "individuals who tend to be overly passive or lack assertiveness may experience mistreatment or exploitation of others, or they may conform to others in an effort to avoid

14

being the focus of attention." (Psychological Report of Applicant p.9). He testified that although the only information he was provided came exclusively from Applicant's counsel, including the overall objective of his report, and that he was being paid by Applicant's counsel to generate such a report for use in this hearing, he tried to be "as objective as possible" and "not blindingly biased." A copy of Harari's CV and of his report was introduced into evidence as Applicant's Exhibits #1 and #2.

Harari testified that he interviewed Applicant on September 25, 2013 at the Leath Correctional Institute. He testified that he did not interview or speak with any members of Applicant's family and his total time spent with Applicant was very brief, both of which  limit the results of his findings. He testified that he administered three psychological tests: the MMPI-2- RF, the PDS, and the PAI. He testified that he selected the MMPI-2-RF and PMI because these inventories are peer reviewed. He testified that he performed these tests with the specific focus of determining Applicant's susceptibility to coercion. He testified that these tests measure current personality characteristics and are not retroactive. He testified that there were no significant or moderate findings of deception or malingering for any of the three tests administered, which he believes indicates that he was able to collect accurate data from Applicant. He testified that based on his interview and testing, Applicant experiences situational distress directly related to her incarceration, including missing her family. He testified that he found no evidence that she suffers from any type of major clinical symptoms, sociopathic personality tendencies, or any personality disorders. He testified that the psychological testing data derived from the PAI and the MMPI-2-RF resulted in moderate elevation in scales pertaining to interpersonal passivity, conforming tendencies, and meek characteristics that may show  Applicant has difficulty standing up for herself. Harari testified that based on his hypothesis that "individuals who tend to be overly passive and lack assertiveness may   experiment mistreatment or exploitation by other, or may conform to others in an effort to avoid being the focus of attention," the results of his psychological testing show that Applicant's passive-submissive interpersonal tendencies may make her more susceptible in coercive situations. However, he acknowledged that this is only a hypothesis and he has no training or background on false confessions or coercion.

(Tr. 1605-1607).

**Petitioner**

Applicant testified that while operating her day care, three small children died over a nine year period from 1998 to 2007. She testified that at the time of the final infant's death in 2007, she was operating her day care without a license in clear violation of the Department of Social Services (DSS) and with more children than allowed by DSS. She testified that after the third death in 2007, law enforcement visited her home and asked her to come to the Richland County Sheriff's department for an interview.

. . .

Applicant testified that she voluntarily returned to the sheriff's department on April 17, 2007 around noon for the subsequent interview and polygraph examination. She testified that she is diabetic and had taken her insulin on that morning, but not her pills; she could not recall if she had eaten anything that morning. She testified that she was under financial pressures due to her loss of her DSS licensure for day care, but acknowledged that she had been illegally operating her day care without a license for some time when the final child passed. She testified that she was also under stress from learning that her husband may have fathered a child with her best friend. She testified that she signed a Waiver of Rights form and that she fully understood those rights and the implications of waiving those rights, which she had also testified to at trial.

She testified that she voluntarily took a polygraph test because she wanted to help law enforcement. She testified that she thought the interviews and polygraph would only involve the last child's death and was surprised when she was asked about Victim's death. She testified that the polygraph lasted less than three hours and she was informed that she did not "clear" the polygraph test at its conclusion. She testified that she became stressed, desperate to go home, and was intimidated by law enforcement officers who demanded to know what had happened to

16

Victim. She testified that she was also feeling the effects of low blood sugar, was irritated, and had a headache. She testified that it was at this time, approximately three hours after the interview first began, when she gave her first verbal statement regarding Victim's death. She testified that she then repeated her statement to at least two more law enforcement officers. She testified that she then used the restroom, but that she was escorted to and from the restroom, which she found to be threatening. However, she acknowledged that this was after she had given multiple statements implicating herself in Victim's death.

Applicant testified that she then signed an additional Waiver of Rights form, which she testified at trial was signed voluntarily and knowingly. She testified that following the signing of a second Waiver of Rights form, she gave a written statement implicating herself in Victim's death. She testified that she also gave statements implicating herself in the death of the second infant who died while under her care. She testified that she was arrested that evening

Applicant testified that Douglas Strickler and Elizabeth Fielding Pringle were appointed to represent her shortly after her arrest. She testified that she was incarcerated for seventeen months before she was released on bond. She testified that she met with her attorneys frequently and that the meeting frequency increased as the trial drew closer. She testified that members of her family also met with her attorneys. She testified that she was involved with her case and discussed possible defenses to put forth at trial, witnesses that could or should be used at trial, as well as expert witnesses. She could not recall if her attorneys consulted with any outside polygraph examiners or experts. She testified that she knew her attorneys intended to call Dr. Collins as a witness and that she knew that Dr. Collins would testify that the physical condition of Victim supported death due to pneumonia.

She testified that her confession was always a primary focus in her case and that she discussed using Kassin as an expert witness regarding false confessions and police interrogations. She testified that she informed her attorneys that the confession was her own words, but that it was false and the result of coercion. She testified that she could not recall if they discussed the possibility of him testifying at a <u>Jackson v. Denno</u> hearing.

> She testified that she discussed whether she should testify at the hearing with her attorneys and that all [were] in agreement that she should not testify at this hearing. She testified all were also in agreement that they would not call her husband as a witness.

(Tr. 1608-1610).

The PCR court held the following with respect to this issue, quoted verbatim:

### Ineffective Assistance of Counsel during the Jackson v. Denno Hearing

> Applicant asserts that counsel was ineffective for[sic] during the <u>Jackson v. Denno</u> hearing, arguing that counsel failed to properly prepare for the hearing, failed to call witnesses or offer testimony at the hearing, failed to effectively cross-examine the State's witnesses, failed to make any sort of argument to the judge regarding the voluntariness of the statement, and failed to advise Applicant on the importance and implication of the hearing or her right to testify at it. This Court finds that Applicant has failed to meet her requisite burden of proof in regards to this allegation. First, the Court finds that Applicant has failed to establish any deficiencies in counsel's representation in regards to the <u>Jackson v. Denno</u> hearing. The uncontroverted testimony reveals that Applicant, Pringle, and Strickler discussed the <u>Jackson v. Denno</u> hearing numerous times and weighed benefits and risks of making an argument or calling witnesses at the hearing. Pringle and Strickler testified that they both had represented countless defendants in <u>Jackson v. Denno</u> hearings and that the success rate for exclusion of a statement was extremely low, which they advised Applicant. Additionally, Pringle and Strickler testified that there was no valid ground on which to challenge the voluntariness of Applicant's statement, as Applicant readily admitted that she voluntarily and knowingly waived her rights multiple times and gave a voluntary statement which she insisted was false. Pringle and Strickler both testified that there was no reasonable chance of convincing the court that Applicant's will was so overborne that her statement should be excluded, especially when Applicant possessed so few of the risk factors that Kassin would testify regarding. Counsels testified that they considered calling Kassin as a witness at the hearing, and even discussed the matter with him, but ultimately decided it would be best to reserve his

18

testimony for trial, as there was an extremely low likelihood that Applicant's statement would be suppressed and they did not want to give the State a preview of his controversial testimony weeks prior to trial. Additionally, Pringle testified that Applicant was extremely anxious and nervous about testifying and they also did not want the State to have notice of this before trial. Furthermore, counsels testified that they discussed having Applicant evaluated and consulted with a trusted psychologist, who advised against doing so as there was a significant likelihood it would not be in Applicant's best interest.

Based on the foregoing, this Court finds that counsel was well beyond prepared for the Jackson v. Denno hearing, had amply prepared Applicant for this hearing, and together, all three made a strategic decision that it was in Applicant's best interest not [to] call witnesses or present an argument  to avoid revealing their case to the State weeks before trial, particularly in light of  Kassin's controversial and widely criticized methodolgy. This Court finds that this strategy was valid and prudent based on all testimony presented, and therefore, counsels' performances were not deficient. See Edwards v. State. 392 S.C. 449, 456-57, 710 S.E.2d 60, 64 (2011) ("[W]hen  counsel articulates a valid reason for employing a certain strategy, such conduct generally will not be deemed ineffective assistance of counsel. The validity of counsel's strategy is viewed under an 'objective  standard of reasonableness.'" Lounds v. State. 380 S.C. 454, 462, 670 S.E.2d 646, 650 (2008). The United States Supreme Court has cautioned that "every effort be made to eliminate the distorting effects of hindsight" and evaluate counsel's decisions at the time they were made. Strickland. 466 U.S. at 689. Accordingly, we must be wary of second-guessing trial counsel's tactics. Whitehead v. State. 308 S.C. 119, 122, 417 S,E.2d 529, 531 (1992)). This Court finds that counsels' performance went well beyond the standard of reasonableness according to professional norms, and therefore Applicant has failed to establish any deficiency regarding this allegation. Therefore, this Court finds that this allegation must be denied and dismissed with prejudice.

(App. 1618-1620).

The PCR court found that counsel was "well beyond prepared" for the Jackson

19

v. Denno hearing, had prepared Petitioner for the hearing, and counsel, along with Petitioner, made a strategic decision not to call witnesses or present an argument to avoid revealing their case to the State weeks before trial.[5] Pringle testified that Petitioner gave her first verbal statement implicating herself to the officers after the first polygraph. (App. 1449-1450). Pringle testified that they had two independent evaluations done on the polygraph tests and reports and both experts reported that the results clearly showed deception on Petitioner's part in both the first and second polygraph test. (App. 1427-1428). Therefore, Pringle testified that she did not want to bring up the polygraph tests at the Jackson v. Denno hearing based on the two independent experts' opinions. Additionally, Pringle testified that the voluntariness of the statement was never an issue, but they sought out Kassin as a potential expert witness regarding false confessions. (Tr. 1432-41). However, while Petitioner freely admitted her confession was voluntary, albeit false, there was no significant benefit in presenting witnesses or making an argument at the Jackson v. Denno hearing. Pringle testified that while there were some risk factors that could make Petitioner

_____

[5] The PCR court found that Counsel chose not to put up any witnesses at the Jackson v. Denno hearing revealing there case to the State because they did not feel there was a valid ground on which to challenge the voluntariness of Petitioner's statement. Petitioner had readily admitted that she voluntarily and knowingly waived her rights multiple times and gave a voluntary statement which she subsequently asserted was false. Trial counsel Elizabeth Pringle (Pringle) testified that Petitioner voluntarily signed a Waiver of Rights form before the polygraph examination, and Petitioner told her she understood the rights she was waiving.

susceptible to a false confession, they were minimal and not enough to get the statement excluded. (App. 1441). Pringle testified that Petitioner had extreme anxiety about testifying which that they did not want the State to know before her testimony at trial. (App. 1439-40). Therefore, they all agreed it would be in Petitioner's best interest not to present witnesses at the Jackson v. Denno hearing as they did not want to give the State a preview of the testimony they would present at trial. (App. 1439). Trial Counsel Strickler presented similar testimony testifying that he, Pringle and Petitioner all discussed the possibility of calling Kassin and Petitioner as witnesses at the Jackson v. Denno hearing but made a strategic decision not to because Kassin was a controversial witness so that they did not want the State to have a chance to preview his testimony before trial. (App. 1491). Additionally, both counsel testified they did not want to reveal significant portions of Petitioner's case before trial when there was very little chance the statement would be excluded. Additionally, both Strickler and Pringle testified that plea negotiations were still ongoing at the point of the Jackson v. Denno hearing, and they felt that if the State had the opportunity to cross examine her at that point, there would be no incentive on their part to continue with the plea negotiations. (App. 1491-1492; 1442).[6] Courts are instructed not to second guess an

---

[6] Petitioner testified at PCR that she discussed whether she should testify at the Jackson v. Denno hearing with her attorneys, and they were all in agreement that they would not call her as a witness. (App. 1416).

attorney's trial strategy and tactics. <u>Goodson v. United States</u>, 564 F.2d 1071, 1072 (4th Cir.1977); <u>Stamper v. Muncie</u>, 944 F.2d 170 (4th Cir.1991). Where counsel articulates valid reasons for employing a certain strategy, such conduct is not ineffective assistance of counsel. <u>See</u> <u>Daniels v. Lee</u>, 316 F.3d 477, 491 (4th Cir.2003).“Judicial scrutiny of counsel's performance must be highly deferential, and a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.” <u>Strickland</u>, 466 U.S. at 689. Here, Counsels' strategy not to reveal their case to the State weeks before trial especially when they opined that the voluntary statement would not be excluded did not fall below an objective standard of reasonableness. <u>Id</u>. The PCR court, applying the deferential standard for evaluating strategy decisions by trial counsel, found counsel not ineffective. Its decision was not contrary to or an unreasonable application of applicable Supreme Court precedent. <u>See</u> <u>Strickland</u>, 466 U.S. at 689 (“. . . a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time). Because of the difficulties inherent in making the evaluation, a court must “. . . indulge a strong presumption that counsel's conduct falls

22

within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption. . . " <u>Id</u>. The PCR court's findings were not contrary to, nor did they involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. The findings were also not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  <u>See</u> 28 U.S.C. § 2254(d)(1) & (2). Accordingly, it is recommended that Ground One be denied and dismissed.

## **<u>Ground Two</u>**

In Ground Two, Petitioner argues ineffective assistance of trial counsel in calling Dr. Collins as an expert witness and/or failing to properly prepare Dr. Collins for her trial testimony. Respondent asserts that the state court conclusions were a reasonable application of <u>Strickland v. Washington</u> and were based upon a reasonable application of facts as found by the PCR court. In response, Petitioner argues the PCR court unreasonably held that defense counsels' trial strategy for use of Dr. Collins was reasonable. Petitioner submits that within minutes of calling Dr. Collins to the stand, trial counsel Strickler "walked her into agreeing with the State by asking her if she had an opinion as to the cause of death if she considered the Petitioner's statements."

(Doc. #16, p. 2). Petitioner asserts Strickler should never have asked Dr. Collins about her consideration of outside statements, and knowing that she would conclude the victim was smothered if she considered those statements, it was prejudicial ineffective assistance of counsel to ask the question. As a result, Petitioner states the jury heard Dr. Collins, the expert called to support the defense, refer to Petitioner's statement as a confession of a "smothering" and the State was able to exploit this on cross examination and in the closing argument. Petitioner argues that while Dr. Collins testified on direct examination that Petitioner holding her hand over the victim's mouth for only 15-20 seconds would not cause death, upon cross examination, she agreed that the victim was smothered. Petitioner asserts these two positions are irreconcilable. Petitioner submits that since defense counsel admitted they knew Dr. Collins would reach the conclusion that the victim was smothered when considering the Petitioner's statements, it was ineffective assistance of counsel to lead her into such testimony, and it would have been better not to call Dr. Collins at all and rely on cross examination of the State's experts.

This issue was raised and ruled upon by the PCR court and raised in the petition for writ of certiorari. The PCR held the following:

> Ineffective Assistance of Counsel for calling Dr. Collins and/or properly preparing her
>
> Applicant asserts that counsels were ineffective for calling

Dr. Collins as an expert witness and/or for failing to properly prepare Dr. Collins for her trial testimony. This Court finds that Applicant has failed to carry her necessary burden of proof in regards to this allegation. First, the Court finds that Applicant has failed to establish any deficiencies in counsels' representation in regards to the decision to call or prepare Dr. Collins for trial. Counsels testified that Dr. Collins has an exemplary reputation for her expertise in child homicide cases and that she was known for her "even handed" expert opinions. Strickler testified that Dr. Collins, the medical examiner for Charleston County, testifies frequently and he was very pleased that she agreed to take on this case as an expert on Applicant's behalf. Strickler testified that [he] met with Dr. Collins in Charleston to review Applicant's case, as well as discussed the case with her by phone multiple times. Both counsels testified that they knew Dr. Collins would provide the strongest testimony regarding Victim's pneumonia being significant and in better alignment with the physical symptoms than smothering. Additionally, both counsels testified that they were aware that Dr. Collins would testify that if provided with Applicant's confession, the medical opinion would likely be asphyxiation by smothering. However, both counsels testified that they were surprised with the manner in which she said this, but not the underlying proposition. Strickler testified that regardless of this,  Dr. Collins testimony was still necessary, as she was the only witness who could provide the jury with expert testimony that Victim's pneumonia was pervasive and significant enough to be fatal and that the physical symptoms better coincided with death by  pneumonia than by smothering. Additionally, Strickler testified that as Applicant's underlying defense was that the confession was false, he wanted to highlight to the jury that the medical expertise showed pneumonia was the cause of death absent this false and coerced confession. In his closing argument, Strickler did highlight to  the jury that it was solely their role to determine whether Applicant's confession was false, not Dr.

25

Collins, who was strictly there to provide expert testimony on the medical evidence surrounding Victim's death. Based on the aforementioned, this Court finds that Applicant has failed to meet her burden of establishing deficiency of counsels' performance in regards to Dr. Collins' testimony. This Court finds that counsels' decision to call Dr. Collins as an expert was of sound and reasonable strategy. See Edwards. 392 S.C. at 456-57, 710 S.E.2d at 64. Therefore, this Court finds this allegation must be denied and dismissed with prejudice.

(App. 1620-1621).

As set forth above, this court's review is to determine whether the PCR court's decision involved an unreasonable application of federal law or an unreasonable determination of the facts in light of the State court proceeding. Here, Pringle testified that Dr. Collins had an exemplary reputation for her expertise in child homicide cases and was known to be a very "even-handed" expert which lends her a great deal of credibility. (App. 1445). Counsels testified that they knew Dr. Collins would provide necessary testimony that the victim had significant pneumonia which better aligned with the physical symptoms and to counter the opinion of the State's pathologists that the pneumonia was too minimal to cause death. (App. 1446). At trial, Dr. Collins testified that excluding Petitioner's statements and only considering the information available in 1998 when the death occurred and based solely on the autopsy findings, she would have agreed that the pneumonia was moderate and significant enough to cause the death. (App. 778-779). Dr. Collins further testified that blue fingernails and

26

"glans penis" were indicative of pneumonia and that vomiting was not associated with suffocation. (App. 1446; 795-796). Additionally, Dr. Collins testified that putting your hand over a child's mouth and nose for 15-20 seconds would not cause death. (App. 798).[7] Counsels' strategy was to argue that the confession was false so Dr. Collin's expert testimony was necessary to show pneumonia as the cause of death absent the false and coerced confession. (App. 1460-1496). Therefore, Counsels' strategy was to have the jury find the statements were false leaving the cause of death as pneumonia. Both counsel testified they were aware that Dr. Collins would testify that the cause of death was likely asphyxiation by smothering if provided the Petitioner's statements but were surprised at the extent of her testimony upon cross examination. Pringle testified that Dr. Collins was the best expert in the state that "[w]hat we tried to do with her was to have her parse those two thing out and one, provide good solid testimony about he medical issue that we believed was better than [the State's pathologists] and she was able to speak to the pneumonia in a more informed and I think credible and believable way." (App. 1460). Pringle testified that even though they were aware that considering Petitioner's statements, Dr. Collins would "say in the abstract if you have a confession that you would take that into

---

[7] Pringle testified that the only statement or confession that Petitioner made was that she covered the child's nose and mouth with her hand for 15-20 seconds but never made a statement or confessed to homicide. (App. 1448-49).

27

consideration and she would help us to parse that out and demonstrate that, I don't think I expected her to say that" upon cross examination. (App. 1469; 1480). Strickler testified that he "knew that she would testify that if you separated the confession element, which is someone else's business to determine whether you could use it, and diagnose it solely on the basis of the medical evidence that she would say it's pneumonia, which she did.. . . Now I didn't know that she would go ahead and come across with it in the fashion that she did when Mr. Meadors cross examined her, she was fairly–I was surprised at the reaction to the cross examination. But I was not surprised that she would say if the question is put to her that if you consider the confession then the call would be asphyxiation. I wasn't surprised about that at all." (App. 1490-1491). The PCR court found that counsels' decision to call Dr. Collins as an expert was sound and reasonable strategy. (Tr. 1621). Courts are instructed not to second guess an attorney's trial strategy and tactics. <u>Goodson v. United States</u>, <u>supra</u>; <u>Stamper v. Muncie</u>, <u>supra</u>. Where counsel articulates valid reasons for employing a certain strategy, such conduct is not ineffective assistance of counsel. <u>See Daniels v. Lee</u>, supra."Judicial scrutiny of counsel's performance must be highly deferential, and a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from

28

counsel's perspective at the time." <u>Strickland</u>, 466 U.S. at 689. The PCR court's factual conclusions were not unreasonable based on the evidence presented at the PCR evidentiary hearing. Furthermore, the PCR court's decision did not involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States unreasonable application of federal law. Accordingly, it is recommended that Ground Two be dismissed.

## **CONCLUSION**

As set out above, a review of the record indicates that the petition should be dismissed. Therefore, it is RECOMMENDED that Respondent's motion for summary judgment (Doc. #11) be granted and the petition be dismissed without an evidentiary hearing.

It is FURTHER RECOMMENDED that all outstanding motions be deemed moot.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
September <u>30</u>, 2016                     United States Magistrate Judge
Florence, South Carolina

**The parties' attention is directed to the important information on the attached notice**.