IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Andrea Person, | ) Civil Action No. 4:15-4606-RMG |
| Petitioner, | ) |
| v. | ) **ORDER AND OPINION** |
| Angelia Rawski, Warden, | ) |
| Respondent. | ) |

This matter is before the Court on the Report and Recommendation ("R. & R.") of the Magistrate Judge. The Magistrate has recommended that the Court grant Respondent's motion for summary judgment and deny the petition without an evidentiary hearing. (Dkt. No. 23.) This Court has reviewed the record in this matter, the decisions of the state courts, the briefs of the parties, the Magistrate's R. & R., Petitioner's objections to the R. & R., and the relevant case law. After careful consideration, the Court **GRANTS** Respondents' motion for summary judgment and **DISMISSES** the petition for writ of habeas corpus.

## I. Background

### A. Indictment and Trial

In 2007, the Richland County grand jury indicted Petitioner for Homicide by Child Abuse for causing the 1998 death of Zachary Ulengchong (the "Victim"). The Victim was the first of three infants to die while at the day care Petitioner ran out of her home. The Victim's 1998 autopsy indicated that he died from natural causes related to lobular pneumonia. Later, during an investigation triggered by the death of the third infant almost ten years later, Petitioner told police that she had held her hand over the Victim's mouth for 15-20 seconds to stop him from screaming and that he died shortly afterwards.

Douglas S. Strickler ("Strickler"), Chief Public Defender for the Fifth Judicial Circuit, and Elizabeth Fielding Pringle ("Pringle"), Chief Public Defender of Richland County, represented Petitioner at trial in November 2009. The theory of the defense was that Petitioner made a false confession to the police.[1] The jury found Petitioner guilty as charged in the indictment. Judge Alison R. Lee sentenced Petitioner to twenty-two (22) years imprisonment.

B.   Direct Appeal

LaNelle Cantey, Appellant Defender of the South Carolina Division of Appellate Defense, represented Petitioner on appeal. Petitioner raised the following arguments on direct appeal:

1) Did the trial court err in denying appellant's motion for a directed verdict when the only evidence against appellant was her own statement to police which was not proven by evidence *aliunde* the confession?

2) Did the trial court err in denying appellant's motion for a mistrial after Officer David Wilson testified that he did have other contact with appellant that day but not on this case which raised the specter of other charges related to the deaths of two other babies in her care?

(Dkt. No. 1-6 at 208.)

The South Carolina Court of Appeals affirmed Petitioner's conviction and sentence.

C.   Post-Conviction Relief

Petitioner filed an application for post-conviction relief (PCR) on June 19, 2012. She filed an amended petition through counsel on September 25, 2013, raising the following grounds for relief:

---

[1] In the pleadings and in this Order, Petitioner's statement to police is sometimes referred to as a "confession." Petitioner disputes whether it is appropriate to refer to her statement as a confession since some expert testimony indicated at trial that 15-20 seconds of obstruction would be insufficient to cause the death of a child by asphyxiation. Whether or not victim's statement amounted to a full confession is not dispositive here.

1) Ineffective Assistance of trial counsel at a critical stage of the case, the pretrial *Jackson v. Denno* hearing, including the failure to properly prepare for the hearing, the failure to call witnesses or offer testimony at the hearing, the failure to effectively cross-examine the State's witnesses, the failure to make any sort of argument to the judge regarding the voluntariness of the statement, and failing to advise Applicant on the importance and implications of the hearing or her right to testify at it.

2) Ineffective assistance of trial counsel for calling Dr. Kimberly Collins as an expert witness and/or for failing to properly prepare the witness.

(Dkt. No. 1-6 at 252.)

An evidentiary hearing was held before the Honorable James R. Barber, III, on October 2, 2013.[2]

(Dkt. No. 1-6 at 267.) Post-conviction relief was denied.

D.   PCR Appeal

Through her current counsel, Alexis K. Lindsay, Petitioner filed a petition for writ of certiorari on August 7, 2014, asking:

1) Did the circuit court err in holding that petitioner's trial counsel was not ineffective in failing to prepare for and present witnesses and arguments at the pretrial *Jackson v. Denno* hearing?

2) Did the circuit court err in holding that Petitioner's trial counsel was not ineffective in calling Kimberly Collins, M.D. as an expert witness?

(Dkt. No. 10-3). The Supreme Court of South Carolina denied Petitioner's application for post-conviction relief in its entirety. (Dkt. No. 10-6).

E.   Petition for Writ of Habeas Corpus

On November 13, 2015, Petitioner, via counsel, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. (Dkt. No. 1.) On March 2, 2016, respondent filed a return and memorandum with a motion for summary judgment. (Dkt. Nos. 10, 11.) On April 21, 2016,

---

[2] Petitioner was represented by counsels Alexis K. Lindsay, Esquire, and Thornwell F. Sowell, III, Esquire.

Petitioner filed her opposition. (Dkt. No. 16.) On May 2, 2016, Respondent filed a reply. (Dkt. No. 18.) Petitioner moved for an evidentiary hearing on July 25, 2016. (Dkt. No. 20.) The Magistrate issued a Report and Recommendation on September 30, 2016. (Dkt. No. 23.) Petitioner filed her objections on October 17, 2016, and Respondent filed a reply on November 3, 2016. (Dkt. Nos. 24, 26.)

Petitioner has raised the following allegations in her petition, quoted verbatim here:

| | |
|---|---|
| GROUND ONE: | Petitioner's trial counsel was constitutionally ineffective in their lack of effort at the pretrial *Jackson v. Denno* hearing. |
| Supporting Facts: | The prosecution's only evidence against Petitioner was her statements to police. The *Jackson v. Denno* hearing was the one chance for the defense to have Petitioner's statements ruled inadmissible. However, trial counsel did not call any witnesses, made little attempt to cross-examine the prosecution's witnesses, and waived their right to make an argument. Trial counsel did not make any valid attempt to keep the statements out even though trial counsel admitted at the PCR hearing that the "confession" was "everything." |
| GROUND TWO: | Trial counsel was constitutionally ineffective for hiring and calling a forensic pathologist at trial who agreed with the State's expert opinion. |
| Supporting Facts: | The prosecution's expert witnesses testified that the victim died of asphyxiation. Therefore, it was crucial that the defense's expert testify that the victim died of pneumonia, which was the original cause of death listed on the death certificate. Instead, the defense's expert, Dr. Kimberly Collins, testified that the cause of death could be pneumonia only if the Petitioner's statements to police were not considered. When she considered those statements, however, Dr. Collins actually agreed with the prosecution's experts' conclusion that asphyxiation was the cause of death. Her testimony bolstered the prosecution's case, and trial counsel knew she would testify this way but chose to call her anyway. |

(Dkt. No. 1 at 5, 7.)

## II.    Legal Standard

### A.    Report and Recommendation of the Magistrate Judge

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

When a proper objection is made to a particular issue, "a district court is required to consider all arguments directed to that issue, regardless of whether they were raised before the magistrate." *United States v. George*, 971 F.2d 1113, 1118 (4th Cir. 1992). "[A]ttempts to introduce new evidence after the magistrate judge has acted are disfavored," though the district court may allow it "when a party offers sufficient reasons for so doing." *Caldwell v. Jackson*, 831 F. Supp. 2d 911, 914 (M.D.N.C. 2010) (listing cases).

### B.    Habeas Corpus

Claims adjudicated on the merits in a state court proceeding cannot be a basis for federal habeas corpus relief unless the challenged decision was "contrary to, or involved an unreasonable application of clearly established federal law as decided by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1), (2). Section 2254(d) codifies the view that habeas corpus is a "'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal."

*Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Therefore, when reviewing a state court's application of federal law, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000). Moreover, review of a state court decision does not require an opinion from the state court explaining its reasoning. *See Harrington*, 562 U.S. at 98 (finding that "[t]here is no text in [§ 2254] requiring a statement of reasons" by the state court).

    C.    Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution guarantees defendants the right to effective assistance of counsel in criminal prosecutions. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). To make a case for habeas relief on the grounds of ineffective assistance of counsel at trial, a petitioner must show (1) that his trial counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that but for counsel's error, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). The Court must apply a "strong presumption" that trial counsel's representation fell within the "wide range of reasonable professional assistance," and the errors must be "so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Harrington*, 562 U.S. at 104. This is a high standard, one in which a habeas petitioner alleging prejudice must show that counsel's errors deprived him "of a fair trial,

a trial whose result is reliable." *Strickland*, 466 U.S. at 687. A finding that it was "reasonably likely" that the outcome would have been different but for counsel's error is not dispositive of the "prejudice" inquiry. Rather, the Court must determine whether the result of the proceeding was fundamentally unfair or unreliable. *See Harrington*, 562 U.S. at 104; *Strickland*, 466 U.S. at 694.

The Supreme Court has cautioned that "'[s]urmounting *Strickland*'s high bar is never an easy task[,]' . . . [e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington*, 562 U.S. at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). When evaluating an ineffective assistance of counsel claim, the petitioner must satisfy the highly deferential standards of 28 U.S.C. § 2254(d) and *Strickland* "in tandem," making the standard "doubly" more difficult. *Id.* In such circumstances, the "question is not whether counsel's actions were unreasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland*'s 'deferential standards.'" *Id.*

Courts are reluctant to characterize tactical or strategic decisions by trial counsel as ineffective assistance. *Carter v. Lee*, 283 F.3d 240, 249 (4th Cir. 2002). A "strong presumption" exists that counsel's actions were the function of trial tactics and not "sheer neglect." *Harrington*, 562 U.S. at 109. This rule, however, is not absolute where the purported strategic decision is based upon an error or ignorance of the law by trial counsel. *Wilson v. Mazzuca*, 570 F.3d 490, 502 (2d Cir. 2009) (omissions based upon "oversight, carelessness, ineptitude or laziness" cannot be explained as "trial strategy") (*quoting Eze v. Senkowski*, 321 F.3d 110, 112 (2d Cir. 2003); *Ramonez v. Berghuis*, 490 F.3d 482, 488 (6th Cir. 2007) (a strategic choice made without a professionally competent investigation of the Petitioner's options is "erected upon . . . a

rotten foundation" and is not entitled to deference) (*quoting Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005).

## III. Analysis

### A. Ground One – Ineffective Assistance at *Jackson v. Denno* Hearing

Petitioner claims her trial counsel was ineffective at her pre-trial *Jackson v. Denno* hearing when they (1) failed to properly prepare for the hearing; (2) failed to call witnesses (including Dr. Kassin) to testify that Petitioner was vulnerable to making a false confession; (3) failed to call Petitioner to testify about her own vulnerabilities in the face of police questioning; (4) failed to make any arguments to the judge about the voluntariness of Petitioner's statements to police; and (5) failed to present polygraph and other interrogation evidence to make the case that Petitioner's statements were not voluntary.

Petitioner claims these errors were prejudicial to her because the only evidence against Petitioner was her own statements to police, and the *Jackson v. Denno* hearing was the only opportunity to have those statements suppressed. This Court agrees with the PCR court's findings regarding counsel's performance at the *Jackson v. Denno* hearing so quotes them verbatim here:

> The uncontroverted testimony reveals that Applicant, Pringle, and Strickler discussed the Jackson v. Denno hearing numerous times and weighed benefits and risks of making an argument or calling witnesses at the hearing. Pringle and Strickler testified that they both had represented countless defendants in Jackson v. Denno hearings and that the success rate for exclusion of a statement was extremely low, which they advised Applicant. Additionally, Pringle and Strickler testified that there was no valid ground on which to challenge the voluntariness of Applicant's statement, as Applicant readily admitted that she voluntarily and knowingly waived her rights multiple times and gave a voluntary statement which she insisted was false. Pringle and Strickler both testified that there was no reasonable chance of convincing the court that Applicant's will was so overborne that her statement should be excluded, especially when Applicant possessed so few of the risk factors that Kassin would testify regarding. Counsels testified that they considered calling Kassin as a witness at the hearing, and even discussed the matter with him, but ultimately decided it would be best to reserve his testimony

> for trial, as there was an extremely low likelihood that Applicant's statement would be suppressed and they did not want to give the State a preview of his controversial testimony weeks prior to trial. Additionally, Pringle testified that Applicant was extremely anxious and nervous about testifying and they also did not want the State to have notice of this before trial. Furthermore, counsels testified that they discussed having Applicant evaluated and consulted with a trusted psychologist, who advised against doing so as there was a significant likelihood it would not be in Applicant's best interest.
> ...
> [Petitioner with her counsels] made a strategic decision that it was in Applicant's best interest not [to] call witnesses or present an argument to avoid revealing their case to the State weeks before trial, particularly in light of Kassin's controversial and widely criticized methodolgy. [sic]

(Dkt. No. 1-7 at 123-25.)

As for the polygraph evidence, Petitioner's defense counsel commissioned two separate evaluations of Petitioner's polygraph tests, and each evaluation indicated that Petitioner showed deception. (Dkt. No. 1-6 at 433-34.) It was, therefore, objectively reasonable for defense counsel to make the strategic decision not to present testimony about the polygraph test at the *Jackson v. Denno* hearing because it could have damaged Petitioner's credibility.

Petitioner's counsel was well-prepared for the *Jackson v. Denno* hearing and pursued a valid strategy under the circumstances. There was simply no compelling evidence in the record to support any grounds for suppressing Petitioner's statements to the police, and Petitioner openly admitted that she made a voluntary confession, so her counsel strategically chose not to present evidence or witnesses at the *Jackson v. Denno* that would compromise their trial strategy. Further, since Petitioner has not cited any specific facts that additional witness testimony or evidence would have established to support the argument that her statements were involuntary, she has failed to meet her burden of showing that the outcome would have been different (i.e. that her statements to police would have been suppressed) had counsel presented the witnesses and evidence discussed above. *See Ladner v. Pate*, No. 5:13-CV-02811-JMC, 2015 WL 690248,

at *7 (D.S.C. Feb. 18, 2015). This Court agrees with the PCR court's decision that defense counsel's performance at Petitioner's *Jackson v. Denno* hearing was reasonable.

      B.      Ground Two – Ineffective Assistance for Calling Expert Witness Dr. Collins

Petitioner argues that her counsel were ineffective because they called Dr. Collins to testify despite their awareness that she was potentially vulnerable to cross-examination on the issue of whether the Petitioner's admissions to law enforcement would alter her opinion regarding the Victim's cause of death. Petitioner argues that, armed with this knowledge, her counsel should have avoided calling Dr. Collins at all and simply relied on cross-examinations of the prosecution's expert witnesses to make their case.

A defense counsel can be ineffective for failing to properly investigate a witness's testimony where that testimony directly contradicts the theory of the defense. *See Ingle v. State,* 560 S.E.2d 401, 403 (S.C. 2002) (finding ineffective assistance where defense counsel presented victim's mother as witness in sexual assault prosecution without first interviewing her which prejudiced defendant). In this case, the record shows that defense counsel investigated Dr. Collins's opinions in preparation for trial and were aware of the risks associated with her testimony. However, defense counsel made the strategic decision to call Dr. Collins in an effort to raise doubts about the prosecution's strong medical testimony that, if left unchallenged, was highly prejudicial to the Petitioner's defense.

The prosecution presented three expert witnesses - Dr. Armstrong, Dr. Nichols, and Dr. Smith – all of whom testified that the pneumonia detected in the Victim's autopsy was minimal. Two of the medical experts testified that the pneumonia present was insufficient to cause death, and Dr. Nichols concluded that a full examination of the record established that the Victim died from asphyxiation. The theory of the defense was that Petitioner gave a false confession to police and that the victim indeed died of pneumonia. To succeed on this defense, defense counsel

needed an expert witness to support the theory that the Victim's death was the result of pneumonia. Defense counsel testified in Petitioner's state post-conviction proceeding that they elected to call Dr. Collins as a witness because she was able to provide the strongest expert testimony that the Victim's pneumonia was both significant and more aligned with the physical symptoms than smothering. (Dkt. No. 1-6 at 451.) Defense counsel investigated Dr. Collins's opinions before trial and were aware of the potential risk that Dr. Collins would testify, as she did on cross-examination, that if she considered Defendant's statements to police she would conclude that the Victim died from asphyxiation. Defense counsel nonetheless made the strategic decision to call Dr. Collins, despite this known risk, because her testimony about the sufficiency of pneumonia to cause the Victim's death was critical to the defense. (Dkt. No. 1-6 at 474.)

In sum, confronted with two bad options (calling Dr. Collins with the risk that she would make damaging admissions on cross-examination or not calling Dr. Collins and leaving the prosecution's compelling medical testimony unchallenged), defense counsel made the strategic decision to put Dr. Collins on the stand. This is the very type of strategic or tactical decision that trial counsel must often make in a criminal case and is not a proper basis for an ineffective assistance of counsel claim. Therefore, the Court finds that defense counsel's decision to call Dr. Collins as a witness does not establish ineffective assistance of counsel under these circumstances.

## IV.  Conclusion

Defense counsel's performance in this case fell well within the range of reasonableness. As a result, this court finds that the PCR court's decision was not contrary to clearly established federal law or based on an unreasonable determination of the facts in light of the evidence

-12-

presented at trial. For the foregoing reasons, the Court **GRANTS** Respondents' motion for summary judgment and **DISMISSES** the petition for writ of habeas corpus.

**AND IT IS SO ORDERED.**

_____
Richard Mark Gergel
United States District Court Judge

February 7, 2017
Charleston, South Carolina